UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PHOENIX INTERNATIONAL  CIV. NO: 20-1684
HOLDINGS, INC.

VERSUS  SECTION T(3)

UH SERVICES GROUP, LLC

## ORDER

Before the Court is a Motion to Dismiss Claims for Consequential Damages in Counterclaim[1] filed by Phoenix International Holdings, Inc. U.H. Services Group, LLC ("UHSG") has filed an opposition,[2] to which Phoenix filed a reply.[3] For the following reasons, the Motion is **GRANTED**.

## FACTUAL BACKGROUND

This case involves contractual claims arising from an agreement to perform underwater services in support of the Beltzville Dam, a Pennsylvania-based flood control project managed by the U.S. Army Corps of Engineers ("USACE"). Phoenix International Holdings, Inc. ("Phoenix") provides diving and automated technologies in performing assorted underwater services including inspections, repairs, and maintenance for dams and reservoirs.[4] In March 2019, Phoenix entered into a Master Services Agreement (MSA) with U.H. Services Group ("UHSG"), a Louisiana-based construction contractor hired to manage repair efforts for the Beltzville Dam in accordance with USACE specifications.[5] Following the execution of the MSA, Phoenix submitted its proposal specifying the work and services to be performed on October 8, 2019.[6] Phoenix contends that

---

[1] R. Doc. 23. This order pertains only to Count Two, "Cause for Delay." *See* R. Doc. 22 at 40.
[2] R. Doc. 27.
[3] R. Doc. 32.
[4] https://www.phnx-international.com/what-we-do/dam-irm/.
[5] R. Doc. 1 at 2; http://www.uhservicesgroup.com/contact.
[6] R. Doc. 22 at 2.

1

UHSG accepted that proposal without modification, and in doing so proceeded on a time and material basis.[7] UHSG disagrees, and instead claims it issued a verbal request for Phoenix to provide services at a lump sum fixed rate.[8] Upon submission of Phoenix's invoice, this dispute surfaced, UHSG refused to furnish payment, and Phoenix filed suit for breach of contract. UHSG predicates its counterclaim on allegations that Phoenix is liable for damages caused by delays in commencing diving due to a credentialing issue with Phoenix's divers.[9] Phoenix disputes this claim, arguing UHSG's counterclaim for lost profits is precluded by an express waiver provision within the MSA.[10]

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[11] Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted.[12] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[13] In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings,[14] and the documents attached to the complaint.[15]

A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[16] The

---

[7] R. Doc. 1 at 2.
[8] R. Doc. 22 at 6.
[9] R. Doc 22 at 29.
[10] R. Doc. 23-1 at 2.
[11] Fed. R. Civ. P. 12(b)(6).
[12] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Matter of Am. River Transp., Co., LLC*, CV 18-2186, 2019 WL 2847702, at *2 (E.D. La. July 2, 2019).
[14] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).
[15] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 883 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

complaint is construed in the light most favorable to plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in plaintiff's favor.[17] On the other hand, courts may not rely on "legal conclusions that are disguised as factual allegations."[18] If factual allegations are insufficient to raise a right to relief above the speculative level, the claim should be dismissed.[19]

Central to this dispute is the Master Service Agreement executed by the parties and the scope of a specific provision excluding claims for consequential damages, which states in pertinent part that "Notwithstanding any other provision of this Agreement, neither party shall be liable to the other for any consequential, indirect, special or punitive damages, including but not limited to, loss of use, loss of profit, loss of revenue…".[20] The question is whether the provisions of the MSA apply and, if so, whether those provisions preclude UHSG's counterclaim.

UHSG's first argument appears to assert that, by accepting Phoenix's specific work proposal specifying rates and performance, the parties entered a separate agreement "outside of the MSA," and the waiver of consequential damages provision does not apply.[21] This cannot be true because of the cooperative nature in which the MSA operates. UHSG cites *Page v. Gulf Oil Corp.* in concluding that the MSA does not cover "specific, terminable performance," and is thus not a binding contract between Phoenix and UHSG governing the performance of services on the Beltzville Dam Project.[22] However, the fact that an MSA does not govern specific performance does not render it irrelevant. Here, as in *Page*, the MSA provides the framework for subsequent

---

[17] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).
[18] *Jeanmarie v. United States*, 242 F.3d 600, 603 (5th Cir. 2001) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).
[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929, 940 (2007).
[20] R. Doc. 1-2 at 12-13.
[21] R. Doc. 27 at 5.
[22] R. Doc. 27 at 3; 775 F.2d 1311, 1315 (5th Cir. 1985).

contracts resulting from oral or written "work or purchase order for services."[23] The MSA serves as a foundational agreement that contemplates additional contracts the parties may enter. In addition to specific terms, subsequent agreements adopt the clauses set forth in the preliminary MSA to avoid repetition.[24]

The Fifth Circuit illustrates this relationship in *Page* using the "rules of the game" analogy cited here by UHSG.[25] The parties decided to "play ball" upon submission and acceptance of the specific work order, at which point the rules set forth by the MSA became operable alongside the terms of the specific work order. UHSG notices this fact within its brief, stating the MSA in this matter "sets forth [Phoenix and UHSG's] agreement to abide by certain terms should they enter into contractual relations from time to time."[26] One such category of certain terms contemplated by the MSA is paragraph 27, the consequential damages provision.[27] Because the specific work order arises under and pursuant to the framework of the MSA, the Court finds the waiver of consequential damages provision applicable.

Turning to the provision and its relation to the counterclaim, UHSG argues somewhat alternatively that the MSA does govern and expressly affords the right to seek delay damages. UHSG makes this argument by highlighting language regarding *force majeure*, asserting that, because the MSA specifically prohibits claims for damages caused by *force majeure*, the contract impliedly allows for *non-force majeure* damages claims. The Court finds this point unpersuasive because the MSA instead declares the opposite: delays or failures caused by *force majure* do not constitute default or give rise to claims for damages. This is the entirety of the language; there is

---

[23] R. Doc. 27 at 4 (*quoting Matte v. Zapata Offshore Co.*, 784 F.2d 628, 630 (5th Cir. 1986)).
[24] *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 394 (5th Cir. 1991).
[25] *Id*. at 3; Page, 775 F.2d at 1315 ("…the blanket agreement merely sets out the rules of the game in the event that the parties decide to play ball.").
[26] R. Doc. 27 at 4; *quoting Simar v. Tetra Techs., Inc.*, No. 15-CV-01950, 2019 WL 1007263, at *3 (W.D. La. March 1, 2019).
[27] R. Doc. 1-2 at 12-13.

no granting of a right to damages, and the Court declines to reject the express terms of the MSA by implication through a separate provision. Furthermore, even if such an assumption were made, the express language of the waiver provision begins by dispensing any potential conflict, stating, "Notwithstanding any other provision of this agreement…".[28] Thus, the Court concludes that the waiver provision does not grant the right to seek delay damages.

Finally, UHSG attempts to distinguish its claims from those waived in the MSA as "general" damages flowing directly from Phoenix's alleged breach of the contract, as opposed to "consequential" indirect damages. This argument falls short by ignoring the latter and instructive portion of the provision, which states that neither party shall be liable for the enumerated damages "arising under this Agreement or as a result of, relating to or in connection with the work or services."[29] The Court agrees with Phoenix that the express language of the MSA broadly precludes certain damages regardless of whether they arise directly or indirectly. Accordingly, UHSG's counterclaim for delay damages must be dismissed pursuant to Rule 12(b)(6) because it states a claim for relief precluded by the language of the controlling MSA.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss Claims for Consequential Damages in Counterclaim is **GRANTED**.[30]

New Orleans, Louisiana, this __16th__ day of July, 2021.

_____
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**

---

[28] R. Doc. 1-2 at 12-13.
[29] R. Doc. 1-2 at 12-13.
[30] R. Doc. 23. This order dismisses UHSG's counterclaim titled, "Cause for Delay." *See* R. Doc. 22 at 40.

5