UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PHOENIX INTERNATIONAL HOLDINGS, INC.** | * | **CIVIL NO. 20-01684** |
| | | **SECTION:  T (3)** |
| **v.** | * | |
| | | **HON. GREG GUIDRY** |
| **UH SERVICES GROUP, LLC** | * | |

## ORDER

Before this Court is Plaintiff Phoenix International Holdings, Inc.'s ("Phoenix") *Motion for Summary Judgment* dismissing Defendant UH Services Group, LLC's ("UHSG") detrimental reliance counterclaim.[1] UHSG filed a response.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

This case centers on an alleged agreement to perform underwater services for the maintenance of the Beltzville Dam, a Pennsylvania-based flood control project managed by the U.S. Army Corps of Engineers ("USACE"). UH Services Group ("UHSG") is a Louisiana-based construction contractor that was hired to inspect and repair the dam.[3] Phoenix International Holdings, Inc. ("Phoenix") is a Virginia-based diving company that furnishes both workers and automated machines that perform underwater services such as dam inspections and repairs.[4] In March 2019, the two entered into a Master Services Agreement ("MSA"), a document that would

---

[1] R. Doc. 108.
[2] R. Doc. 84, 111.
[3] R. Doc. 1 at 2.
[4] *Id.* at 1-2.

manage their working relationship between various "government projects."[5] Subsequently, UHSG and Phoenix allegedly entered into an agreement to work together on the Beltzville Dam project. On October 8, 2019 Phoenix submitted a work proposal to UHSG.[6] In response, UHSG "issued a verbal work order under the MSA" directing Phoenix to start work a week later.[7] The work was completed the next month.

Now, the parties dispute (1) the existence of a binding contract and (2) the correct method of payment. Phoenix contends UHSG accepted the October work proposal without modification and, in doing so, created an agreement bound by the "time and material basis" of payment outlined in it. UHSG disagrees, claiming that no binding contract was formed and, alternatively, that the parties agreed to a "lump sum fixed rate." Upon submission of Phoenix's invoice, UHSG refused to furnish payment and Phoenix filed suit for, among other things, breach of contract.[8] In response, UHSG asserted two counterclaims seeking to recover losses from project delays caused by Phoenix.[9]

Earlier in this litigation, the Court dismissed one of UHSG's counterclaims asking for delay damages.[10] Now, Phoenix moves the Court to rule on UHSG's remaining counterclaim, a detrimental reliance claim. Phoenix advances two arguments. First, they allege UHSG's claim fails because the "alleged damages are precluded" by the MSA's bar on consequential damages.[11]

---

[5] *Id.* at 2; R. Doc. 22 at 1.
[6] *Id.*; R. Doc. 22 at 2.
[7] *Id.*; R. Doc. 22 at 2.
[8] *See id.*
[9] R. Doc. 20.
[10] R. Doc. 83.
[11] R. Doc. 108-1 at 12.

Phoenix argues UHSG's relief sought, "personnel costs, and equipment expenses," fall under one of the several prohibited categories of consequential damages in the MSA.[12] Second, Phoenix argues it never made a representation that UHSG relied on to its detriment.[13] They assert the representations in question—unmet thirty-six hour work estimates—were not "promises" but "mere assurances" and, therefore, could not be reasonably relied on.[14]

In response, UHSG asserts it reasonably relied on Phoenix's representation that it would take thirty-six hours to complete the agreed upon work.[15] UHSG argues it, as a prime contractor, used Phoenix's representation in its assessment of the Beltzville Dam project. When the time constraint was not met, it suffered a detriment, namely unanticipated "personnel costs, and equipment expenses."[16] Accordingly, UHSG argues summary judgment is inappropriate because there are genuine issues of material fact as to whether their reliance was reasonable, whether they suffered a detriment, and whether Phoenix made representations about the speed of their work and the efficacy of certain maintenance techniques.[17] The parties submitted two additional filings in this matter, echoing their positions.[18]

## LAW & ANALYSIS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[12] *Id.* at 12.
[13] *See id.*
[14] R. Doc. 108-1 at 7.
[15] R. Doc. 113 at 1-3.
[16] R. Doc. 22 at 39-40.
[17] *See* R. Doc. 113.
[18] R. Docs. 117, 121.

to any material fact and that the moving party is entitled to a judgment as a matter of law."[19] The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law."[20] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party. [21] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[22] However, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[23]

Under the Louisiana Civil Code, detrimental reliance "requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance."[24] To "prevail on a detrimental reliance claim, Louisiana Law does not require proof of a formal, valid, and enforceable contract" because such claims center on an alleged promise, not necessarily a written contract.[25] "[T]he focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but instead whether

---

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).
[20] *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc*., 882 F.2d 993, 996 (5th Cir. 1989)).
[21] *Celotex,* 477 U.S. at 323.
[22] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).
[23] *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[24] *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co*., 376 F.3d 399, 403 (5th Cir.2004); La. Civ. Code Art. 1967.
[25] *Suire v. Lafayette City–Parish Consol. Gov't*, 907 So.2d 37, 59 (La. 2005).

a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment."[26]

Here, summary judgment on UHSG's detrimental reliance claim is inappropriate for at least two reasons. First, Phoenix insists it never made a consequential representation to UHSG because the thirty-six hour estimate it submitted to UHSG was not a "promise," but instead a mere representation.[27] However, UHSG alleges Phoenix submitted the thirty-six hour estimate as a "quotation for diving services in support of [UHSG's] project."[28] By industry standards and the conduct of the parties, a "quotation" could be construed as a promise to perform a timely service that a contractor relies upon. Therefore, when viewed in a light most favorable to UHSG, there is a genuine issue of material fact regarding whether Phoenix's proffered estimate "constituted [] assurances to do something."[29] Such a factual analysis would also resolve whether UHSG's possible reliance was reasonable and justified, a prong of UHSG's detrimental reliance claim.

Second, Phoenix argues UHSG "cannot show that it suffered any detriment as a result of its alleged reliance" on the estimate.[30] However, if all factual disputes are resolved in UHSG's favor, UHSG may have suffered a harm as a result of project delays. Such harms could range from unexpected "personnel costs, and equipment expenses" to a detrimental change in UHSG's overall position on the project.[31] As a result of the delays, UHSG allegedly "presented a modification

---

[26] *Id.*
[27] R. Doc. 108-1 at 7.
[28] R. Doc. 113 at 4.
[29] R. Doc. 113 at 6.
[30] R. Doc. 108-1 at 11.
[31] R. Doc. 22 at 39-40.

request to USACE" for additional funding, but it "did not receive any money from USACE attributable to Phoenix's" diving delays.[32] As a result, UHSG may have incurred a range of unanticipated costs flowing from Phoenix's setbacks that it had to weather at its own expense. Viewed in a light most favorable to UHSG, those factual allegations may constitute a harmful change in position that supports a detrimental reliance claim.

Accordingly, the Court finds there are several outstanding genuine factual disputes that preclude summary judgment, including (1) whether Phoenix made a promise to UHSG; (2) whether UHSG reasonably relied on such a promise; and (3) whether UHSG suffered a detriment.[33] When viewed in a light most favorable to UHSG, these questions remain unanswered by any uncontested facts and, therefore, summary judgment is inappropriate. In any case, "[w]hether a party reasonably relied on a representation is usually a question of fact" which must be resolved by the factfinder.[34]

Furthermore, Phoenix argues that damages sought by UHSG, "personnel costs and equipment expenses," are classes of consequential damages explicitly proscribed by the MSA. However, the Court finds it unnecessary to review this argument. As noted in previous orders, there are outstanding factual questions surrounding the formation and terms of any alleged

---

[32] R. Doc. 113 at 19.
[33] As UHSG notes, it must be determined whether UHSG "reasonab[ly] reli[ed] on Phoenix's assurances to complete each of the tasks called for in [the work proposal] within the timeframes set forth in [the estimate]" when UHSG began the Beltzville dam project. R. Doc. 113 at 12.
[34] *Voelkel*, 2015 WL 1184148, at *6.

agreement between the parties. Therefore, such an argument is presently inappropriate. Accordingly, the motion is **DENIED**.[35]

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the *Motion for Summary Judgment* is **DENIED.**

New Orleans, Louisiana, this ___2nd___ day of February, 2022.

                                                          Hon. Greg Gerard Guidry
                                                        United States District Judge

---

[35] If it is ultimately found that a contract does exist between the parties, the Plaintiff may re-raise this claim at the appropriate time.